1  ROBERT S. BREWER, JR.
   United States Attorney
2  BRUCE C. SMITH
   Assistant U.S. Attorney
3  California State Bar No. 078225
   Federal Office Building
4  880 Front Street, Room 6293
   San Diego, California 92101-8893
5  Telephone: (619) 546-8266
   E-mail: bruce.smith@usdoj.gov
6
   Attorneys for Plaintiff
7  United States of America

8              UNITED STATES DISTRICT COURT

9            SOUTHERN DISTRICT OF CALIFORNIA

10  UNITED STATES OF AMERICA,          Case No. '19CV1915 MMA MSB

11                    Plaintiff,        COMPLAINT FOR
                                        FORFEITURE
12         v.

13  $42,120.00 IN U.S. CURRENCY,

14                    Defendant.

15

16         By way of complaint against the defendant $42,120.00 IN U.S. CURRENCY

17  ("$42,120 in currency"), plaintiff UNITED STATES OF AMERICA alleges:

18         1.    This Court has jurisdiction over this action by virtue of the provisions of

19  Title 28, United States Code, Section 1355(a) and Title 21, United States Code,

20  Section 881(a)(6), because the defendant $42,120 in currency constitutes money furnished

21  or intended to be furnished in exchange for a controlled substance, or proceeds traceable

22  to an exchange for controlled substances in violation of Chapter 13 of Title 21,

23  United States Code.

24         2.    Venue is proper in this district pursuant to Title 28, United States Code,

25  Section 1395 because the defendant $42,120 in currency was found in this district.

26         3.    On March 19, 2019, in the Southern District of California, at the San Diego

27  International Airport ("SDIA"), members of the San Diego Integrated Narcotics Task Force

28  ("NTF") Commercial Interdiction Unit were on duty, seeking to intercept and seize

controlled substances and proceeds from the sales of controlled substances passing though the airport.

> A. The Task Force officers ("TFO") were trained and experienced, and knew that persons engaged in the commercial interstate distribution of controlled substances frequently used SDIA and the aircraft that arrived and departed there to distribute controlled substances throughout the United States.

> B. The Task Force officers were trained and experienced, and knew that persons engaged in the commercial interstate distribution of controlled substances frequently used SDIA, and the aircraft that arrived and departed there, to transport drug sales proceeds and funds to be used to purchase drugs in and out of San Diego. Those proceeds and funds were usually in the form of United States currency.

> C. The Task Force officers were trained and experienced, and knew that persons engaged in the commercial interstate distribution of controlled substances frequently used couriers to transport controlled substances, drug sales proceeds, and funds to be used to purchase drugs in and out of San Diego. SDIA and the aircraft that arrived and departed there are relied upon as a means of sending and receiving such couriers.

4. On or about March 19, 2019, NTF Task Force officers and Drug Enforcement Administration ("DEA") agents assigned to SDIA learned DARRIN FRIPP ("FRIPP") was traveling from Greensboro, North Carolina to SDIA aboard Delta Airlines Flight 1264.

> A. FRIPP was traveling on a one-way ticket, purchased on March 17, 2019, just two (2) days prior to departure.

> B. FRIPP, a resident of San Diego, in the Southern District of California, did not purchase a round trip ticket for his travel to Greensboro, North Carolina and back to San Diego.

> C. FRIPP was traveling with two (2) pieces of checked luggage.

> D. The TFOs and DEA agents had specialized training and were experienced in investigating illegal drug and drug currency couriers. They knew the //

purchase of a cross-country, one-way airline flight ticket a day or two before departure is unusual, and can be indicative the traveler is an illegal drug or drug currency courier.

E.     The TFOs and DEA agents knew the general traveling public purchases round trip airline tickets weeks or even months in advance of the scheduled departure date. Advance purchase of round trip airline tickets results in lower fares for the traveler. Purchasing a one-way airline ticket even a week in advance of departure all but guarantees one will pay the highest fare.

F.     The TFOs and DEA agents had specialized training and were experienced in investigating illegal drug and drug currency couriers.  They knew illegal drug and drug currency couriers often times do not know when drugs or currency will be available for transport until the last minute.  The nature of illegal drug trafficking, and its uncertainties, often compel couriers and their employers to purchase airline tickets close to the departure date.

G.     The TFOs and DEA agents were trained and experienced, and knew that San Diego is a primary source region for controlled substances cultivated and manufactured on the west coast of the United States ("west coast"), Latin America, and elsewhere.

H.     The TFOs and DEA agents were trained and experienced, and knew that controlled substances cultivated and manufactured on the west coast, in Latin America, and elsewhere were sent and distributed for resale from source regions such as San Diego to all points north and east within the United States.   In their experience, the Greensboro, North Carolina region was a known destination market for controlled substances.

5.     On March 19, 2019, just before 1:00 p.m. in SDIA Terminal Two, the TFOs and DEA agents prepared for the arrival of Delta Airlines Flight 1264 and passenger FRIPP.

//

//

A.   At approximately 1:00 p.m., shortly after Delta Airlines Flight 1264 arrived, the TFOs and DEA agents, armed with a physical description and a photo of FRIPP, identified him as he exited the jet way at Gate 51.

B.   FRIPP emerged from the aircraft carrying a small backpack.

6.   TFO Santana and TFO Billberry, both dressed in plain clothes, followed FRIPP as he walked toward the luggage carousel area.

A.   TFO Santana and TFO Billberry watched FRIPP retrieve two (2) large pieces of luggage from a carousel.

7.   Moments after FRIPP harvested his two (2) large pieces of luggage from the carousel, TFO Billberry approached FRIPP, identified himself as a law enforcement officer, and showed FRIPP his law enforcement credentials.

A.   TFO Billberry assured FRIPP he was not in trouble, and asked if the officers could speak with him about his travels.

B.   FRIPP was cooperative and stopped to speak with TFO Billberry.

C.   TFO Billberry explained to FRIPP, among other things, the SDIA NTF interdiction team just wanted to be sure FRIPP was not traveling with contraband such as illegal drugs, weapons, or large amounts of currency.

D.   FRIPP told TFO Billberry FRIPP just flew in from North Carolina, where he spent the last four (4) days visiting his children.

E.   FRIPP looked down towards his two (2) large pieces of luggage, told TFO Billberry he was carrying some money, but added it was not a large sum.

F.   FRIPP estimated he had $8,000.00 in one of his pieces of luggage.

G.   FRIPP did not seem sure or confident about the dollar amount of currency he was transporting.

H.   The TFOs and agents were trained and experienced, and knew paid drug currency couriers, acting on behalf of those who traffic in controlled substances, frequently did not know the exact dollar amount of the currency they were transporting.

//

4

8.    FRIPP accepted TFO Billberry's invitation to continue their conversation away from the crowds of SDIA passengers, in the privacy of the nearby SDIA Terminal Two NTF office.

A.    FRIPP walked with TFO Billberry to the SDIA NTF office.

9.    Upon arriving at the SDIA NTF office, TFO Bilberry asked FRIPP if he would remove the cash he was carrying from inside his luggage.

A.    FRIPP opened one (1) of his two (2) large pieces of luggage slightly, and removed a sealed brown paper envelope, approximately 8 inches by 10 inches in size.

B.    FRIPP handed the sealed brown paper envelope and its contents to TFO Billberry.

C.    TFO Billberry, in turn, presented the sealed brown paper envelope and its contents to "Voodoo", a law enforcement controlled substance detection dog.

D.    TFO Billberry, noted Voodoo alerted to the sealed brown paper envelope and its contents, indicating to TFO Billberry the dog detected the odor or aroma of one or more controlled substances.

E.    After learning Voodoo alerted to the sealed brown paper envelope, FRIPP granted TFO Billberry permission to open it and examine its contents.

10.    Acting on consent granted him by FRIPP, TFO Billberry opened the brown paper envelope.

A.    Upon opening the brown paper envelope, TFO Billberry discovered a large amount of U.S. currency.

11.    TFO Billberry asked FRIPP if FRIPP would consent to a search of all the pieces of luggage he was transporting.

A.    FRIPP expressed his consent for the TFOs and agents to search his luggage.

B.    The first piece of luggage to be examined was the one which contained the sealed brown paper envelope.

//

C.     A second sealed brown paper envelope, identical in appearance to the first one, was discovered inside.

D.     The second brown paper envelope was wrapped inside articles of clothing.

E.     Inside the second brown paper envelope was a magazine with a large amount of U.S. currency taped to many of the magazine pages.

F.     The second piece of luggage was examined, and held two (2) more identical brown paper envelopes.

G.     Those brown paper envelopes also held magazines with large amounts of U.S. currency taped to many pages of the magazines.

12.     TFO Billberry asked FRIPP how much currency he was transporting.

A.     FRIPP told TFO Billberry $12,000.00 belonged to FRIPP, and the remainder belonged to someone FRIPP referred to as "my boy Anton."

B.     FRIPP declined to identify "Anton" or give any contact information for him.

C.     FRIPP estimated he was carrying a total of approximately $30,000.00.

D.     The TFOs and agents were trained and experienced, and knew paid drug currency couriers, acting on behalf of those who traffic in controlled substances, frequently did not know the exact dollar amount of the currency they were transporting.

13.     TFO Billberry noted FRIPP was traveling with a cellular telephone.

A.     TFO Billberry asked FRIPP for permission to examine the contents of FRIPP'S cellular telephone.

B.     FRIPP granted consent to TFO Billberry to examine the contents of FRIPP'S cellular telephone.

C.     While TFO Billberry asked FRIPP for permission to examine FRIPP'S cellular telephone, TFO Billberry and NTF Group Supervisor Williams noted FRIPP busied himself deleting text messages on the phone.

//

  D. FRIPP told TFO Billberry he was traveling with a second cellular telephone, and granted TFO Billberry permission to examine the contents of the second phone.

  E. FRIPP handed the two (2) cellular telephones to TFO Billberry who, in turn, handed the phones to DEA Special Agent Beauchamp.

 14. On one (1) of the two (2) cellular telephones, DEA Special Agent Beauchamp discovered a photo of a large brick of marijuana, a Schedule I Controlled Substance.

  A. Among FRIPP'S phone contacts, Agent Beauchamp located information regarding a marijuana dispensary referred to as "CBD."

 15. The TFOs and agents examined the contents of FRIPP'S two (2) large pieces of luggage.

  A. The TFOs and agents noted the bags held only a few articles of clothing, a bed pillow, but were otherwise virtually empty.

  B. TFO Billberry knew checking two (2) large pieces of luggage required FRIPP to pay a premium to the airline.

 16. The currency discovered in the two (2) large pieces of luggage was combined, counted, and determined to have a dollar value of $42,120.00.

  A. The $42,120.00 discovered in the two (2) large pieces of luggage is the defendant $42,120 in currency.

 17. The TFOs and DEA agents gathered, examined, and counted the defendant $42,120 in currency found concealed inside the two (2) large pieces of luggage.

  A. The defendant $42,120 in currency was made up of approximately 1,929 bills in a variety of denominations.

  B. The great majority of the bills, to wit, 1,768, were of the $20.00 denomination.

 18. The TFOs and DEA agents had specialized training and were experienced in investigating illegal drug traffickers and drug currency couriers.  They knew illegal street drug sales were virtually always conducted as an exchange of drugs for currency.

A.   The most common denomination used in illegal street drug transactions was the $20.00 bill.

B.   Approximately 91% of the defendant $42,120 in currency was made up of $20.00 bills.

19.   The defendant $42,120 in currency was seized for forfeiture by the DEA as currency constituting proceeds of the purchase(s) of controlled substances, and money possessed with the intent to be furnished in exchange for controlled substances.

20.   TFO Billberry examined FRIPP'S national criminal history record.

A.   On or about December 10, 2009, in Dekalb County, Georgia, before the Dekalb County Superior Court, FRIPP was convicted of purchase / possession of a controlled substance, a felony.

21.   The defendant $42,120 in currency constitutes money furnished or intended to be furnished in exchange for a controlled substance, in violation of Chapter 13, Title 21, United States Code.

22.   Alternatively, the defendant $42,120 in currency constitutes proceeds of, or proceeds traceable to, an exchange for a controlled substance, in violation of Chapter 13, Title 21, United States Code.

23.   Alternatively, the defendant $42,120 in currency was used or intended to be used to facilitate an exchange for a controlled substance, in violation of Chapter 13, Title 21, United States Code.

24.   As a result of the foregoing, the defendant $42,120 in currency is liable to condemnation and to forfeiture to the United States for its use in accordance with Title 21, United States Code, §881(a)(6).

25.   The defendant $42,120 in currency is presently deposited within the jurisdiction of this Court.

//

//

//

WHEREFORE, the United States prays that due process issue to enforce the forfeiture of the defendant $42,120 in currency, and that due notice be given to all interested parties to appear and show cause why said forfeiture should not be declared.

DATED: October 2, 2019

ROBERT S. BREWER, JR.
United States Attorney

s/ Bruce C. Smith
BRUCE C. SMITH
Assistant U.S. Attorney

JS 44 (Rev. 12/07)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
United States of America

## DEFENDANTS
$42,120.00 in U.S. Currency

**(b)** County of Residence of First Listed Plaintiff
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant
(IN U.S. PLAINTIFF CASES ONLY)

NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
AUSA Bruce C. Smith, Phone: (619) 546-8266
USAO, 880 Front Street, Room 6293, San Diego, CA 92101-8893

Attorneys (If Known)   **'19CV1915 MMA MSB**

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☒ 1  U.S. Government
Plaintiff

☐ 3  Federal Question
(U.S. Government Not a Party)

☐ 2  U.S. Government
Defendant

☐ 4  Diversity
(Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☒ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | ☐ 861 HIA (1395ff) | ☐ 810 Selective Service |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 196 Franchise | | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 894 Energy Allocation Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 895 Freedom of Information Act |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | ☐ 463 Habeas Corpus - Alien Detainee | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | ☐ 465 Other Immigration Actions | | |

## V. ORIGIN (Place an "X" in One Box Only)

☒ 1  Original Proceeding

☐ 2  Removed from State Court

☐ 3  Remanded from Appellate Court

☐ 4  Reinstated or Reopened

☐ 5  Transferred from another district (specify)

☐ 6  Multidistrict Litigation

☐ 7  Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
21 U.S.C. Section 881
Brief description of cause:
Narcotics trafficking

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:  ☐ Yes  ☒ No

## VIII. RELATED CASE(S) IF ANY
(See instructions):
JUDGE

DOCKET NUMBER

DATE
10/02/2019

SIGNATURE OF ATTORNEY OF RECORD
s/ Bruce C. Smith

**FOR OFFICE USE ONLY**

RECEIPT #              AMOUNT              APPLYING IFP              JUDGE              MAG. JUDGE

<u>VERIFICATION</u>

I, Daniel Billberry, state and declare as follows:

1.     I am a Task Force Officer, assigned to a San Diego Integrated Narcotics Task Force, Team 8, and am one of the task force officers assigned to this investigation.

2.     I have read the foregoing Complaint For Forfeiture and know its contents.

3.     The facts set forth in the Complaint For Forfeiture are based upon my own knowledge or were facts furnished to me by other United States federal, state, or local law enforcement personnel, civilian witnesses, or other official Government sources.

Based on this information, I believe the allegations in the Complaint For Forfeiture to be true.

I declare under penalty of perjury that the foregoing is true and correct, to the best of my knowledge and belief.

Executed on October ___, 2019.

DANIEL BILLBERRY, TFO
NTF TEAM 8